## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| BOBBY SELLEW, | }<br>} |
| Plaintiff, | }<br>} |
| v. | } Case No.: 2:17-cv-01926-RDP<br>} |
| THE TERMINIX INTERNATIONAL CO., LP, et al., | }<br>}<br>} |
| Defendants. | } |

### MEMORANDUM OPINION

This case is before the court on Defendants' Motion for Partial Dismissal. (Doc. # 14). In this Motion, Defendants request that the court dismiss all claims based on Terminix's services at Plaintiff's residence prior to 2003, and they request that the court dismiss certain time-barred claims. The parties have fully briefed the Motion for Partial Dismissal (Docs. # 14, 16, 17), and it is ripe for decision. After careful review, and for the reasons explained below, Defendants' Motion is due to be denied.

**I.     Factual and Procedural Background**

In 1995, Terminix agreed to provide preconstruction termite treatment for a residence located at 9609 Kourtney Way, Warrior, Alabama 35180 (hereinafter the "Residence"). (Doc. # 10 at ¶¶ 1, 14). Terminix used Dursban TC at the Residence. (*Id.* at ¶ 23). Dursban TC's label required the user to perform a "final grade treatment" around a house at the end of construction. (*Id.* at ¶ 24). Plaintiff alleges that no treatment records exist for a final grade treatment in 1995 at the Residence. (*Id.*). Instead, Terminix's records show that it performed a one-trip treatment, at which it applied 250 gallons of Dursban TC. (*Id.* at ¶ 27).

In 2002, Terminix reinstated the warranty on the Residence. (Doc. # 10-2).[1] Plaintiff alleges that Terminix "misrepresented to the prior owner of the [Residence] that they reissued the 1995 warranty and that no additional treatment was necessary." (Doc. # 10 at ¶ 38). The 2002 contract stated that Terminix bore no responsibility for present or future termite damage to the Residence. (Docs. # 10 at ¶¶ 39-40; 10-2 at 1). Terminix agreed to perform further necessary termite treatments free of charge. (Doc. # 10-2 at 1). Yet, according to Plaintiff, Terminix failed to perform additional treatments in areas of the Residence that were susceptible to termite infestation. (Doc. # 10 at ¶¶ 42-44). Plaintiff purchased the Residence in 2003, and Terminix transferred the 2002 warranty contract to Plaintiff.[2] (*Id.* at ¶ 50). Terminix failed to inspect Plaintiff's residence for termites in 2005, 2006, 2012, and 2014. (*Id.*). Moreover, its employees only inspected the Residence's exterior in 2004, 2010, and 2016. (*Id.* at ¶ 55).

In March 2013, Plaintiff contacted Terminix and informed them of live termites she discovered in the Residence. (*Id.* at ¶ 64). In April 2013, a Terminix employee performed a spot treatment that used six gallons of termiticide. (*Id.* at ¶ 64). According to the Amended Complaint, "Defendants represented to Plaintiff that the faultiness of a properly applied termite barrier treatment caused the infestation and damage with knowledge that they had never properly treated the [Residence] and that the chemical applied in 1995 had worn-off." (*Id.* at ¶ 70). Terminix inspected the Residence two more times between 2013 and 2016 and reported no signs of termite activity. (*Id.* at ¶ 71).

---

[1] The court has considered the exhibits attached to Plaintiff's Amended Complaint in ruling on the Motion for Partial Dismissal. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

[2] The 2002 contract permits assignment to a new owner of the Residence under certain circumstances. (Doc. # 10-2 at 2). For purposes of this Motion to Dismiss, the court assumes that the Residence's former owner assigned his interest in the 2002 contract to Plaintiff in accordance with the assignability clause. If that assignment did not actually occur, the parties can address that in a motion based upon an evidentiary record.

In March 2016, Plaintiff discovered more live termites and termite damage in the Residence. (*Id.*). She reported the termite infestation to Terminix. (*Id.*). A Terminix employee inspected her home and confirmed the infestation, but performed no additional treatment and no further inspection of the Residence. (*Id.* at ¶ 72). In December 2016, a Terminix employee performed a three-minute inspection of the Residence and reported no signs of termite activity, despite the fact that damaged portions of the Residence were exposed and visible. (*Id.* at ¶ 73). Moreover, live termites continued to infest the Residence in December 2016. (*Id.*).

In January 2017, Plaintiff filed a consumer complaint with the Alabama Department of Agriculture and Industries ("ADAI"). (*Id.* at ¶ 74). In February 2017, an ADAI inspector examined the Residence and found termite damage in the front wall of the house and the front and left sides of its basement. (Doc. # 10-4 at 1). The inspector observed "remedial drilling" in the brick veneer on the Residence's front wall, but no other evidence of post-construction treatment. (*Id.*). In March 2017, ADAI directed Terminix to re-evaluate the Residence. (*Id.* at 2). Thereafter, Terminix applied an additional 182.5 gallons of termiticide at the Residence. (Doc. # 10 at ¶ 76). In October 2017, Plaintiff filed her initial state-court Complaint against Defendants. (*See* Doc. # 1-1 at 3).

In her Amended Complaint, Plaintiff raises claims of fraudulent misrepresentation and suppression, negligence, recklessness, negligence per se, negligent hiring, training, and supervision, breach of contract, and unjust enrichment. (*See* Doc. # 10 at ¶¶ 103-33). Plaintiff also requests equitable relief under the made whole doctrine. (*Id.* at ¶¶ 134-41). She alleges that it was impossible for her to discover Defendants' wrongdoing more than two years before the initiation of this lawsuit because: (1) she trusted Defendants as experts in termite protection; (2) Defendants never informed her of a termite infestation problem; (3) Defendants promised to

protect the Residence from termite infestation; and (4) she lacked reason to suspect the lack of pretreatment until 2016. (*Id.* at ¶¶ 9-10).

**II.     Standard of Review**

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual

4

allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all of the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

A statute of limitations defense is an affirmative defense, and a plaintiff is not obligated to negate a timeliness defense in his or her complaint. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated in part on other grounds by Twombly*, 550 U.S. 544. "A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is facially apparent that the claim is time-barred." *Baker v. Sanford*, 484 F. App'x 291, 292 (11th Cir. 2012).

**III.    Analysis**

For the reasons explained below, Defendants' arguments for dismissal of certain claims and damages requests are due to be denied at this stage of the proceedings.

    **A.    Plaintiff's Amended Complaint Sufficiently Explains How Terminix's Alleged Pre-2003 Conduct Relates to Her Individual Claims**

First, Defendants seek to dismiss any claim based on any duty that Plaintiff alleges Terminix owed to her before her 2003 purchase of the Residence. (Doc. # 14 at 2-4). Plaintiff responds that the obligations Terminix undertook in the 2002 contract are enforceable by her because Terminix transferred the 2002 contract to her after her purchase of the Residence. (Doc. # 16 at 3).

Defendants rely on *Cook's Pest Control, Inc. v. Rebar*, 28 So. 3d 716 (Ala. 2009), to argue that they owed Plaintiff no duty before she purchased the Residence in 2003. (*See* Doc. # 14 at 3-4). In *Rebar*, the plaintiffs purchased a house protected by a termite-control contract that was issued by Cook's to the house's former owners. 28 So. 3d at 719. Cook's prepared a wood-infestation inspection report for the house, but did not submit the inspection report until the house's closing. *Id.* The plaintiffs paid a transfer fee to Cook's at closing and executed a protection contract similar to the one held by the house's former owners. *Id.* at 720. The Alabama Supreme Court held that the plaintiffs lacked standing to assert claims based on Cook's services to the prior owners because Cook's services at that time were for the benefit of the former owners. *Id.* at 724. Consequently, Cook's owed no duty to the plaintiffs at that time, and their "purchase of the house did not gain them any protections under the termite-control contract between Cook's and the [former owners]." *Id.*

As a general rule, "[w]hen a party assigns its rights under a contract to an assignee, the assignee steps into the shoes of the assignor and possesses all the rights the assignor originally possessed, but nothing more." *Singer Asset Fin. Co. v. Conn. Gen. Life Ins. Co.*, 975 So. 2d 375, 380 (Ala. Civ. App. 2007). Since the Complaint plausibly indicates an assignment occurred, the court assumes, for purposes of deciding this Motion to Dismiss, that Plaintiff stepped into the shoes of the Residence's former owner and possesses all the rights he had under the 2002 contract. The court finds this case distinguishable from *Rebar*, at least at this stage of the proceedings. The plaintiffs in *Rebar* executed a separate termite protection contract, and nothing in the *Rebar* opinion suggests that the plaintiffs were assignees of a pest-control protection contract. *See* 28 So. 3d at 720. But here, the 2002 contract stated that Terminix would conduct an "Initial treatment" within 30 days of the contract's issuance (Doc. # 10-2 at 1), Plaintiff

6

alleges that no additional treatment occurred because Defendants misrepresented to the Residence's former owner that the contract was a reissuance of a 1995 contract. (Doc. # 10 at ¶ 38). Moreover, Plaintiff alleges that Defendants misrepresented the extent of the 1995 pest control treatment when she reported a termite infestation to Terminix in 2013. (*Id.* at ¶ 70). Thus, after taking the allegations in the Amended Complaint as true, the court is not convinced that Plaintiff lacks standing to raise claims based on Defendants' conduct between 1995 and 2002, as it appears that Defendants' 1995 performance formed a basis of the 2002 contract that allegedly was assigned to Plaintiff in 2003. Again, if Plaintiff's allegations in this respect are not supported by substantial evidence, the court can revisit this issue under Rule 56.

> B. **Defendants' Request to Bar Plaintiff from Recovering Damages for Repairs to the Residence is Due to be Denied Because They Improperly Raised It for the First Time in Their Reply Brief**

In their reply brief, Defendants argue that the liability limitation clauses in the 2002 contract prevent Plaintiff from recovering damages for the repairs to the Residence stemming from termite infestation. (Doc. # 17 at 3-4). Defendants did not raise this issue in their Motion for Partial Dismissal. (*See generally* Doc. # 14). And, this defense could have been raised in the initial Motion, as the Complaint clearly alleges that Defendants transferred the 2002 contract to Plaintiff. (Doc. # 10 at ¶ 50). Because Defendants raised this argument for the first time in their reply brief, and Plaintiff has had no opportunity to respond to it, their request to bar Plaintiff from recovering damages for repair costs is due to be denied without prejudice. *See, e.g.*, *Houston v. Bayer Healthcare Pharm., Inc.*, 16 F. Supp. 3d 1341, 1348 (N.D. Ala. 2014) (asserting that argument to dismiss a claim could be denied because it was raised for the first time in a reply brief); *Pearl v. Mad Engine, Inc.*, No. 7:12-cv-2850-TMP, 2015 WL 5179517, at

*3 n. 6 (N.D. Ala. Sept. 4, 2015) (noting that a new issue cannot be raised in a reply brief because the "non-movant has no opportunity to answer").

## C. Plaintiff Has Sufficiently Pled a Basis for Fraudulent Concealment

Defendants argue that any claim based on a fraud or tort theory is barred if it accrued more than two years before the initiation of this lawsuit, and any contract claim is barred if it accrued more than six years before the initiation of this lawsuit. (Doc. # 14 at 8). Plaintiff responds by asserting that the Complaint sufficiently alleges fraudulent concealment by alleging that Terminix failed to disclose or correct its deficiencies in treating the Residence. (Doc. # 16 at 3-4). Defendants reply that Plaintiff's tort and fraud claims are time-barred, in spite of the fraudulent concealment rule, because she discovered termite damage in the Residence in 2013. (Doc. # 17 at 4-6).

Alabama law provides a six-year statute of limitations for causes of action based on a simple contract. Ala. Code § 6-2-34(9). Negligence claims are subject to a two-year statute of limitations. *Ex parte Tate & Lyle Sucralose, Inc.*, 81 So. 3d 1217, 1220 (Ala. 2011) (citing Ala. Code § 6-2-38(l)). A two-year statute of limitations applies to causes of action based on fraud or deceit. *Parsons Steel, Inc. v. Beasley*, 522 So. 2d 253, 256 (Ala. 1988). A fraud claim does not accrue "until the discovery by the aggrieved party of the fact constituting the fraud." Ala. Code § 6-2-3. Section 6-2-3 of the Alabama Code also tolls the statute of limitations for causes of action that were fraudulently concealed from the aggrieved party. *DGB, LLC v. Hinds*, 55 So. 3d 218, 224 (Ala. 2010). It tolls the limitations period for a cause of action until the plaintiff actually discovers the fraud, or she discovers facts that would alert a reasonable person to the possibility of fraud. *Wheeler v. George*, 39 So. 3d 1061, 1081 (Ala. 2009); *Ex parte Am. Gen. Fin., Inc.*, 795 So. 2d 685, 689 (Ala. 2000).

To toll the limitations period for a cause of action under Alabama Code § 6-2-3, a plaintiff must allege (1) "the time and circumstances of the discovery of the cause of action," (2) "the facts or circumstances by which the defendants concealed the cause of action or injury," and (3) "what prevented the plaintiff from discovering the facts surrounding the injury." *DGB*, 55 So. 3d at 226. In *DGB*, the Alabama Supreme Court held that the plaintiffs sufficiently alleged the time and circumstances of their discovery when they alleged that they discovered the causes of action during depositions in another litigation matter. *Id.* at 227. It also concluded that the plaintiffs sufficiently alleged the facts regarding concealment because they had alleged that the defendants knew about misuse of funds and the purchase of a property for half of its sale price a few days before the transaction at issue, but concealed those facts during the transaction. *Id.* Finally, it held that the plaintiffs sufficiently alleged the circumstances that prevented them from discovering the fraud because they had asserted that the defendants controlled the relevant information, the plaintiffs entrusted the negotiation and execution of the transaction to others, and the plaintiffs relied on the defendants' representations about the sale price in lieu of examining the relevant property records. *Id.* at 228.

Generally, the question of when a plaintiff discovered or should have discovered a defendant's fraud is a jury question. *Wheeler*, 39 So. 3d at 1082. Indeed, it can be decided as a matter of law only if the plaintiff actually knew of facts that would have put a reasonable person on notice of fraud. *Ex parte Ala. Farmers Coop., Inc.*, 911 So. 2d 696, 703 (Ala. 2004) (quoting *Barlow v. Liberty Nat. Life Ins. Co.*, 708 So. 2d 168, 173-74 (Ala. Civ. App. 1997)). But, the limitations period remains tolled if "after discovery of the fraudulent act and inquiry, the plaintiff is misinformed or falsely informed by the defendant and the plaintiff reasonably relies on the

defendant's misrepresentation." *Id.* (citing *Foremost Ins. Co. v. Parham*, 693 So. 2d 409 (Ala. 1997)).

Here, Plaintiff sufficiently alleges that the limitations periods for her claims were tolled by Defendants' fraudulent concealment. She asserts that she learned of the conduct underlying the causes of action in February 2017, when ADAI inspected the Residence and discovered the deficiencies. (*See* Doc. # 10 at ¶ 12). Moreover, she claims that Defendants concealed the causes of action by failing to disclose the deficiencies in their barrier treatment of the Residence, misrepresenting the nature of their 1995 pest control treatment in 2002, performing inadequate yearly inspections of the Residence, misrepresenting the nature of the 1995 pest control treatment when performing a spot treatment for a 2013 infestation, and performing an insufficient inspection in December 2016 when termites still were actively infesting the Residence. (*Id.* at ¶¶ 9, 41, 55, 62-63, 70, 73). Finally, Plaintiff alleges that she failed to discover Defendants' deficient and fraudulent termite control treatment because she relied on their expertise, she lacked the expertise to determine whether Defendants had properly treated the Residence, and Defendants misrepresented the nature of their earlier treatment when she discovered a termite infestation in 2013. (*Id.* at ¶¶ 9-10, 70). As in *DGB*, Plaintiffs' Amended Complaint alleges sufficient facts to support her argument for fraudulent concealment. *Cf.* 55 So. 3d at 227-28.

Defendants argue that dismissal of the tort and fraud claims is appropriate here because Plaintiff concedes that she knew of a termite infestation in 2013, more than two years prior to the filing of this action. (Doc. # 17 at 5-6). But that argument cuts no ice at this stage of the proceedings because the court cannot say, as a matter of law, that knowledge of a termite infestation would place a reasonable person on notice of fraudulent mistreatment of the

Residence. And, even if Plaintiff's knowledge of a termite infestation, standing alone, should have placed her on notice of Defendants' alleged fraudulent conduct (and, to be clear, based on the pleadings, the court cannot say that was the case), Plaintiff has plausibly alleged that the limitations period should remain tolled due to the misinformation she received from Defendants after discovering the alleged fraudulent act and inquiring about the infestation. *See Ala. Farmers Coop.*, 911 So. 2d at 703. Those allegations may or may not have a factual basis. But discovery is necessary before the court can make that assessment. Consequently, Defendants' request to dismiss Plaintiff's claims as time-barred is due to be denied at this stage of the proceedings.

**IV. Conclusion**

For the reasons explained above, Defendants' Motion for Partial Dismissal (Doc. # 14) is due to be denied. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this June 4, 2018.

*[signature]*

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE