## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BOBBY SELLEW,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:17-cv-01926-RDP** |
| | } | |
| **THE TERMINIX INTERNATIONAL** | } | |
| **CO., LP, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

This case involves a dispute between a home owner, Bobby Sellew ("Plaintiff"), and a professional-services company, The Terminix International Company and Terminix International Inc. (collectively, "Terminix" or "Defendant"). Plaintiff advances six claims against Terminix: (1) Fraudulent Misrepresentation, Fraudulent Suppression, and Promissory Fraud; (2) Negligence, Recklessness, and Negligence Per Se; (3) Negligent Hiring, Training, Supervision, and Retention; (4) Breach of Contract; (5) Equitable Relief, including Unjust Enrichment; and (6) Equitable Relief Pursuant to the "Made-Whole" Doctrine. (*See generally id.*). Defendant has moved for summary judgment on Counts One, Two, Three, Five, and Six of Plaintiff's Amended Complaint and partial summary judgment on Count Four. (Doc. # 54). Terminix argues that, under Alabama law, Plaintiff cannot maintain any tort claim or claim for equitable relief. (*Id.* at 4). Defendant also argues that any remedy Plaintiff seeks on her breach of contract claim would be barred (or significantly limited) by the express terms of the contract. (*Id.* at 23).

Defendants' Motion for Partial Summary Judgment has been fully briefed. (*See* Docs. # 54, 55, 56). It is ripe for review. After careful review, and for the reasons discussed below,

Defendant's Motion (Doc. # 54) is due to be granted in part and denied in part.

## I. Factual Background[1]

From 2003 to present, Plaintiff has resided at 9609 Kourtny Way, Warrior, AL 35180 ("Residence"). (Docs. # 10, ¶ 50; 54-3 at 9).[2] On May 4, 1995, Thomas Myrex (who, at that time, was the owner of the Residence) entered into a professional-services contract with Terminix to treat the Residence while the house was being built. (Doc. # 54-1 at 4). Myrex's contract was effective from May 1995 to May 1996, and the terms included treatment and repair protection. (*Id.*). On May 5, 1995, Terminix "pre-treated" the 1,655 square foot Residence with the chemical, Dursban TC. (*Id.* at 6-7, 12). The technician applying the treatment was required, under Terminix's policies and Alabama regulations, to always have the "termiticide label . . . with him that he would be required to follow," as well as the termite annual bulletin that lists the procedures technicians are required follow when treating a residence. (Doc. # 54-2 at 45).

In 1995, Marvin and Holly Hardin, III bought the Residence from Myrex. The Terminix contract transferred to the Hardins, and they extended it until May 1998. (Doc. 54-1 at 11, 15, 19). The renewed contract contained the same terms and conditions as the first Myrex contract. (*Id.* at 17). On August 21, 1995, Terminix performed an "exterior only" inspection, noting there was "no visible sign of active termites." (*Id.* at 13). On May 31, 1997, Terminix performed another inspection, again noting "no termite activity." (*Id.* at 19).

According to the Rule 56 record, the Hardins' contract ended in May 1998 and was not

---

[1] The facts set out in this opinion are gleaned from the parties' submissions and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[2] When the court cites to a specific page number, with respect to depositions, the page number corresponds to the deposition page number. With respect to any other document, the court cites to the court-filed page number.

reinstated until April 4, 2002. (*Id.* at 17). Written on the 2002 "Termite Service Plan" are the words "warranty reinstatement." (*Id.*). This reinstated contract, however, did not contain the provision providing for repair protection that was found in the prior contracts. (*Id.*).

On April 4, 2002, Terminix performed an inspection, noting that there was "no visible termite activity." (*Id.* at 20). There were no treatments done. (*Id.* at 23). Contemporaneously, Terminix completed a "Subterranean Termite Hazard Survey." (*Id.* at 22). The next year, on March 3, 2003, Terminix performed the required annual inspection, again noting there was "no activity or damage seen." (*Id.* at 24).

Later in 2003, Plaintiff purchased the Residence from the Hardins.[3] (Doc. # 54-3 at 10). Both parties concede in the Rule 56 briefing that Plaintiff assumed the Hardins' 2002 contract, but the record is muddled by the fact that, in Plaintiff's Interrogatories, she states that when she purchased the Residence with her former husband, she "believe[s] that it was another company [providing termite protection services] when [they] bought the house and [the contract] was transferred back to Terminix shortly thereafter, but [she] [doesn't] remember when this happened." (Doc. # 54-4 at 3, ¶ 2). Nonetheless, Plaintiff testified that although she "paid money to Terminix initially in 2003" (*see* Doc. # 55-2 at 2, ¶ 5), she never received a copy of her contract with Terminix, or a copy of the Hardins' 2002 service plan. (*Id.* at 3, ¶ 17).

Under the terms of Plaintiff's contract, so long as the annual fee was paid, Terminix agreed to perform annual inspections of the Residence to ensure protection from termite damage. (Doc. # 54-1 at 26). On August 25, 2004, Terminix inspected only the perimeter of the Residence and noted there was "no visible termite activity in [the] accessible areas." (*Id.* at 35).

---

[3] When Plaintiff bought the Residence, she was married to her now ex-husband. However, in 2016, Plaintiff and her husband divorced. Plaintiff is now the sole owner of the home. (Doc. # 54-3 at 12).

There are no records indicating Terminix performed the required annual inspection of the Residence in 2005 and 2006.[4] However, from 2007 to 2011, Terminix completed the annual inspections and never observed any signs of termite activity. (*See id.* at 37-41).

There are also no records indicating that Terminix completed the annual inspection in 2012. In April 2013, however, Terminix received a phone call from Plaintiff regarding a termite infestation she discovered in her youngest daughter's bedroom. (Doc. # 54-3 at 30-31). Plaintiff testified that they arrived home to find the bedroom "swarming" with termites, and they observed visible damage to the baseboard and wall. (*Id.* at 31). In an effort to cover up the visible damage, Plaintiff's brother repaired the baseboard. (*Id.* at 34). Thereafter, Plaintiff called Terminix, and on April 4, 2013, Terminix went to the home to "spot" treat the affected area. (*Id.* at 33). Terminix noted that "live termites [were] located in [the] basement between [the] foundation wall and floor joists." (Doc. # 54-1 at 29). This prompted Terminix to "drill[] into [the] block wall and down drill[] into [the] floor in [the] basement where [the] termites were located." (*Id.*). Plaintiff testified that "Terminix informed [her] following [the] partial treatment in 2013 that [she] may continue to see dead or dying termites for a little while but assured [her] that the treatment would take care of the termite problem." (Doc. # 55-2 at 2, ¶ 10). Subsequently, on December 6, 2013, Terminix performed its annual inspection on the home exterior, home interior, and basement and found "no signs of [termite] activity." (Doc. # 54-1 at 42).

There are no records indicating that Terminix completed an annual inspection in 2014. Terminix resumed its annual inspection on March 19, 2015, when Terminix inspected the home exterior, home interior, basement, and garage and found "no signs of [termite] activity." (*Id.* at 45).

---

[4] While there are no inspection records for 2005, 2006, 2012, and 2014, Plaintiff's interrogatories state that Defendant inspected her home every year sometime in the Spring. (Doc. # 54-4 at 3, ¶ 2).

On February 26, 2016, Terminix completed its annual inspection on the home exterior, home interior, basement, and garage and found "no signs of [termite] activity" (*Id.* at 46). However, in March 2016, Plaintiff discovered another termite infestation in her oldest daughter's bedroom around her bedroom window. (Doc. # 54-3 at 35-36). Plaintiff called Terminix on March 24, 2016, and on March 25, 2016, Terminix came to her house to inspect and treat the problem. (Doc. # 54-1 at 49). Terminix observed a "[d]isturbed barrier" and treated the area "by horizontal drilling under [the] bedroom window 10ft both ways with [12 gallons of] termidor sc 6%." (*Id.*).

A few months after this treatment, Plaintiff called Terminix to ask if the damage to the bedroom window trim would be covered under her contract. (Doc. # 54-3 at 39-40). Terminix informed Plaintiff that her contract did not provide coverage for repairs to "new" damage. (*Id.*). This prompted Plaintiff to contact another professional-services company to try to get a new "bond." (*Id.* at 43).

On December 19, 2016, Terminix completed its annual inspection on the exterior of the home. It found "no signs [of termites] in the areas . . . inspected" (*Id.* at 31).

Unable to secure a new bond, Plaintiff contacted a law firm, and on January 30, 2017, she filed a consumer complaint against Terminix with the Alabama Department of Agriculture and Industries ("ADAI"). (*Id.* at 44). On February 6, 2017, ADAI sent a "notice of inspection" to Terminix to secure the entirety of Plaintiff's file. (Doc. # 54-1 at 44). Subsequently, on February 14, 2017, ADAI inspected the Residence. (Doc. # 55-3 at 3). ADAI's inspection report revealed that the Residence suffered from termite damage "inside . . . along the front in the sheet rock wall covering and wood window trim . . . [and] in the basement area along the front and left siding." (*Id.*). The report also noted "some remedial drilling . . . in the brick veneer in an area on the front to the left side . . . [and that] no other mechanics of a post-construction treatment were observed."

(*Id.*). Plaintiff testified that this report was the first time she became aware that Terminix had not completed the proper treatment to the home when it was first built in 1995—*i.e.*, when Myrex built the home and first secured a contract with Terminix. (Doc. # 55-2 at 3, ¶ 16).

On March 6, 2017, after ADAI completed the inspection report, it notified Terminix of its findings and indicated that "there [were] no records supporting final grade treatment to the outside foundation wall areas of the structure." (Doc. # 55-3 at 2). Consequently, ADAI directed Terminix to re-evaluate the Residence and perform any additional treatments necessary "to ensure that an effective and continuous subterranean termite treatment barrier is present and that all work is performed in accordance with label guidelines." (*Id.*).

On March 24, 2017, at the direction of ADAI, Terminix re-inspected the Residence. (Doc. # 54-1 at 50). Terminix performed a full treatment after observing termites under the front two windows. (*Id.*).

Plaintiff remained skeptical about Terminix's March 24, 2017 treatment. Consequently, on May 25, 2017, she contacted ADAI to express her concern that Terminix did not adequately complete the job they were directed to do.[5] (*Id.* at 46; Doc. # 54-6 at 11). On June 26, 2017, ADAI re-inspected the Residence to evaluate Terminix's treatment. (Doc. # 55-4). ADAI's report stated: "Prior to this re-inspection [Terminix] had returned and completed a complete final grade treatment – recent trenching was observed." (*Id.*).

Plaintiff cancelled her contract with Terminix in 2017. (Doc. # 55-3 at 47-48). Thereafter, Plaintiff filed her Amended Complaint in this case on November 2, 2017. (Doc. # 8).

_____

[5] Plaintiff testified that when Terminix came to treat her property in March 2017, one of the technicians "mentioned that they would have to drill [in the basement slab] and then another technician said they couldn't drill because it would cause flooding." (Doc. # 51-3 at 46). Because Plaintiff feared Terminix "had not done what they were supposed to do," she contacted ADAI once again to re-inspect the property. (*Id.* at 47). However, Plaintiff testified that ADAI stated to her that drilling in the basement slab was unnecessary. (*Id.*).

## II.    Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party

bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## III.    Analysis

Plaintiff advances six different claims against Defendant: (1) Fraudulent Misrepresentation, Fraudulent Suppression, and Promissory Fraud; (2) Negligence, Recklessness, and Negligence Per Se; (3) Negligent Hiring, Training, Supervision, and Retention; (4) Breach of

Contract; (5) Equitable Relief, including Unjust Enrichment; and (6) Equitable Relief Pursuant to the "Made-Whole" Doctrine. Terminix has moved for summary judgment on some but not all of her claims as to liability on Counts One, Two, Thee, Five and Six. It also moved to limit damages on Count Four.

The court will address Plaintiff's claims as follows: First, the court analyzes Defendant's assertion that Plaintiff's claims cannot be based on Terminix's performance before 2003—the year Plaintiff entered into a contractual relationship with Terminix. Second, the court addresses whether Plaintiff's tort claims (for fraudulent misrepresentation, fraudulent suppression, and promissory fraud, and for negligence) can proceed. Finally, the court evaluates the damages available on Plaintiff's breach of contract claim. After careful review, the court concludes that Defendant's Motion for Partial Summary Judgment is due to be granted in part and denied in part, as more fully explained below.

### A. Plaintiff Cannot Base Her Claims on Terminix's Performance Prior to Contracting with Plaintiff

Defendant contends that Plaintiff cannot assert claims based on Terminix's performance on the contract between 1995 and 2002 because Plaintiff was not in privity with Terminix at that time.[6] Under Alabama law:

> There is no contractual obligation on the part of [a termite-control company] to the [future-purchasers of the home]. Protection under the service contract does not run to the owner of the property but to the contractual parties. The [future-purchasers] are not third-party beneficiaries under that contract as they were not intended beneficiaries. The contract was entered into for the purpose of protecting the house as the property of the [prior owners]. The [prior owners] were protecting their interest and investment and were not altruistically protecting the property for subsequent purchasers.

---

[6] In the court's June 4, 2018 Order denying Defendant's Motion to Dismiss, it held that, at that stage of the proceedings, and based upon Plaintiff's allegations in her pleadings, those allegations supported a claim that Plaintiff assumed the Hardins' contract with Terminix. (Doc. # 19). But, we are now at the summary judgment stage of the case, and at this point the court must evaluate the question based upon the Rule 56 record.

*Cook's Pest Control, Inc. v. Rebar*, 28 So. 3d 716, 724 (Ala. 2009) (quoting *Ray v. Montgomery*, 399 So. 2d 230, 233 (Ala. 1980)). Here, there is Rule 56 record evidence showing that, although Plaintiff assumed the Hardins' 2002 contract, she cannot claim the protections of the repair language in Myrex's initial 1995 contract.

To be sure, the Rule 56 record demonstrates that in 1998, long before Plaintiff had an interest in the property, the Hardins allowed their contract (that contained the repair language) to lapse. They did not reinstate their contract with Terminix until 2002. But, the 2002 contract did not contain the "repair" language found in the Hardins' 1998 contract. Plaintiff purchased the Residence in 2003 and testified that "[i]t is [her] understanding that Terminix transferred the existing 2002 termite bond . . . to [her] when [she] purchased [the Residence] in 2003." (Doc. # 55-2 at 4, ¶ 17). Thus, she assumed the Hardins' 2002 contract. Because the 1998 contract had lapsed, neither the Hardins in 2002, nor Plaintiff in 2003, could rely on the "repair" language in the 1995 contract; indeed, that contract had become void.

Therefore, based on the undisputed evidence in the Rule 56 record, Plaintiff cannot base her claims on Terminix's performance (or nonperformance) between 1995 and 2002. *See Rebar*, 28 So. 2d at 724 ("Because the [plaintiffs] did not enter into a contract with [the defendants] to apply the [exterior insulation-finishing system] to the house, because the [plaintiffs] were not the intended purchasers of the house when the EIFS was applied during the construction of the house, and because [the defendants] could not have anticipated when or if the [plaintiffs] would purchase the house, [the defendants] owed the [plaintiffs] no duty to manufacture and apply the EIFS with reasonable care.").

Plaintiff's claims can rest only upon the terms of the assumed 2002 contract and Terminix's conduct beginning in 2003—the year that Plaintiff contracted with Terminix.

### B. Plaintiff's Negligence Claims (Counts Two and Three) Necessarily Fail Under Alabama Law

Counts Two and Three of Plaintiff's Amended Complaint sound in negligence (*i.e.*, negligence, wantonness, negligence per se, and negligent training/hiring/supervision/retention). Before analyzing the merits of these claims, the court first addresses whether any of them can proceed as a matter of Alabama law. Defendant asserts that all of Plaintiff's tort claims should be dismissed because they all are premised on contractual duties (*i.e.*, duties arising based on a contract between the parties) and the "mere failure to perform a contractual obligation is not a tort." *Barber v. Business Prods. Ctr., Inc.*, 677 So. 2d 223, 228 (Ala. 1996), *overruled in part on unrelated grounds by White Sands Grp., L.L.C. v. PRS II, LLC*, 32 So. 2d 5 (Ala. 2009).

Under Alabama law, in order for a plaintiff to establish a claim of negligence, she must prove: "(1) that the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; (3) that the plaintiff suffered a loss or injury; and (4) that the defendant's breach was the actual and proximate cause of the plaintiff's loss or injury." *QORE, Inc. v. Bradford Bldg. Co., Inc.*, 25 So. 3d 1116, 1123 (Ala. 2009) (citing *Dibiasi v. Joe Wheeler Elec. Membership Corp.*, 988 So. 2d 454, 460 (Ala. 2008)). "To establish wantonness, [a] plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty. To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains." *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994).

In this case, the two crucial questions are (1) whether Terminix owed Plaintiff a duty separate and apart from the obligations imposed under the parties' contract, and (2) if so, whether Terminix breached that duty. After reviewing the Rule 56 record and relevant Alabama cases, the court concludes that Terminix did not owe Plaintiff a duty separate from that imposed under a

contract between the parties.

It is well settled that Alabama courts:

> [Do] not recognize a tort-like cause of action for the breach of a duty created by contract because a negligent failure to perform a contract . . . is but a breach of the contract. A plaintiff can only sue in tort when a defendant breaches the duty of reasonable care—the duty one owes to another in his day-to-day affairs—when such a breach causes personal injury or property damage.

*Blake v. Bank of Am., N.A.*, 845 F. Supp. 2d 1206, 1210-11 (M.D. Ala. 2012) (quoting *Vines v. Crescent Transit Co.*, 264 Ala. 114, 85 So. 2d 436, 440 (1956)) (internal quotation marks omitted). *See also McClung v. MERS, Inc.*, 2012 WL 1642209, at *7-8 (N.D. Ala. May 7, 2012) (agreeing with *Blake*); *Fassina v. CitiMortgage, Inc.*, 2012 WL 2577608, at *6 (N.D. Ala. July 2, 2012) (same). Alabama law "does not recognize a tort-like cause of action for the breach of a duty created by a contract." *McClung*, 2012 WL 1642209 at *7 (citation omitted). The pivotal question, then, is whether Plaintiff's tort claims are independent of her contract claim.

For the reasons explained above, Plaintiff cannot base her claims on any actions taken by Terminix before 2003. Thus, as the Rule 56 evidence shows, Plaintiff's so-called tort claims are necessarily based upon the spot treatment done in 2013.

Plaintiff contends that her negligence claims are separate and distinct from any contract claim because Defendant's duties arise "from statutory, common law, and regulatory obligations as Certified Pest Control Operators." (Doc. # 10 at 22, ¶ 113). This argument holds no water.

In her Amended Complaint, Plaintiff claims that Terminix "fail[ed] to conduct adequate and proper inspections . . . ; fail[ed] to apply and maintain a proper vaccination program in accordance with labeling requirements; fail[ed] to disclose and report the condition of the [Residence]; fail[ed] to implement and adhere to quality control procedures; and fail[ed] to warn." (Doc. # 10 at 23). Plaintiff also alleges that, with respect to the 2013 spot treatment, although

Terminix performed under the contract by treating her home, such performance was negligent because Terminix inadequately applied the termiticide. Plaintiff makes a similar assertion with respect to Terminix's inspection of the Residence in 2017. Plaintiff claims that Terminix negligently inspected and treated the Residence. But, these alleged "failures" simply cannot form the basis for a negligence claim. *See Locke v. Ozark City Bd. of Educ.*, 910 So. 2d 1247, 1254 (Ala. 2005) ("[A] negligent *failure* to perform a contract express or implied . . . is but a breach of the contract.") (quotations omitted).

Unquestionably, these activities, and the duty to perform them, "would not exist but for the contractual relationship between the parties." *Halbert v. Credit Suisse AG*, 402 F. Supp. 3d 1288, 1325 (N.D. Ala. 2019) (internal quotations marks omitted). Absent a contractual relationship, Terminix would have had no duty whatsoever to treat or service Plaintiff's home. Thus, "the proper avenue for seeking redress . . . is a breach of contract claim, not a wantonness [or negligence] claim." *Id.*; *see also Vines v. Crescent Transit Co.*, 264 Ala. 114, 118 (Ala. 1955) ("[T]he breach of a contract in *not performing* the obligation there expressed, or not doing it in the way specified, is not in tort. If defendant omits to enter upon the duty to perform, however negligent that might be, that is not a negligent performance and not a tort.") (quotation omitted).

Plaintiff has failed to identify duties arising from an Alabama statute, regulation, or common law, which do not arise from the contract at issue. Therefore, Plaintiff's negligence claims (Counts Two and Three) are based on duties that arise from her contractual relationship with Terminix. Any obligations Terminix owed to Plaintiff arose from their contract, not from any duty of reasonable care generally owed to members of the public. Because Alabama law does not permit Plaintiff to assert a tort claim for negligent performance of a contract, Plaintiffs' negligence and wantonness claims are due to be dismissed. Terminix is entitled to summary judgment on Counts

Two and Three of Plaintiff's Amended Complaint.

## C. There is a Genuine Issue of Material Fact on Plaintiff's Claim for Fraudulent Misrepresentation Claim, But Not on Her Fraudulent Suppression and Promissory Fraud Claims

Defendant first mounts a challenge to Plaintiff's misrepresentation claim based on the statute of limitations. But, that challenge misses the mark. Alabama has a two-year statute of limitations for causes of action based on fraud or deceit. *Parsons Steel, Inc. v. Beasley*, 522 So. 2d 253, 256 (Ala. 1988). A fraud claim does not accrue "until the discovery by the aggrieved party of the fact constituting the fraud." Ala. Code § 6-2-3. Additionally, Section 6-2-3 of the Alabama Code operates to toll the statute of limitations when a party fraudulently conceals material facts from the aggrieved party. *DGB, LLC v. Hinds*, 55 So. 3d 218, 224 (Ala. 2010). And, the limitations period remains tolled until a plaintiff either actually discovers the fraud or discovers facts that would alert a reasonable person to the possibility of fraud. *Wheeler v. George*, 39 So. 3d 1061, 1081 (Ala. 2009); *Ex parte Am. Gen. Fin., Inc.*, 795 So. 2d 685, 689 (Ala. 2000).

Generally, the question of when a plaintiff discovered, or should have discovered, a defendant's fraud is for a jury. *Wheeler*, 39 So. 3d at 1082. Indeed, Alabama courts have indicated that such a question can be decided as a matter of law only if it is undisputed that a plaintiff actually knew of facts that would have put a reasonable person on notice of fraud. *Ex parte Ala. Farmers Coop., Inc.*, 911 So. 2d 696, 703 (Ala. 2004) (quoting *Barlow v. Liberty Nat. Life Ins. Co.*, 708 So. 2d 168, 173-74 (Ala. Civ. App. 1997)).

Here, Plaintiff testified that, in 2013 (after she discovered the termites), Terminix came out to treat the area. The technician assured Plaintiff that the treatment performed would "take care of the termite problem." (Doc. # 55-2 at 2, ¶ 10). She claims that she relied on the technician's assurances that the termite problem was taken care of, but that she did not actually know whether

Terminix performed the treatment properly. (Doc. # 54-3 at 35; Doc. # 55-2 at 2, ¶ 10). Plaintiff also stated in her interrogatories that, at the time Terminix treated the 2013 infestation, she "had no reason to doubt that Terminix had taken the steps necessary to correct the treatment and provide protection from any further termite infestations." (Doc. # 55-2 at 2, ¶ 11). Plaintiff also has testified that she first became "aware that [Terminix's treatment] was ineffective" in 2017. (Doc. # 55-2 at 4, ¶ 16).

While it may be that, in 2013, Plaintiff had her suspicions about whether Terminix's treatment was ineffective, that type of subjective speculation,[7] without more, does not amount to "actual knowledge of facts that would put a reasonable person on notice of the fraud." *Pate v. Toto*, 2018 WL 4951975, at *10 (N.D. Ala. Oct. 12, 2018) (citation omitted). Thus, there is insufficient factual information in the Rule 56 record for the court to conclude that Plaintiff actually knew of facts that would have reasonably indicated fraud on the part of Terminix. There is evidence in the record indicating that Plaintiff did not become fully aware of Terminix's ineffective treatment until she received ADAI's 2017 inspection report. (Doc. # 55-3 at 2; Doc. # 55-2 at 4, ¶ 16). Therefore, the statute of limitations cannot serve as a bar to Plaintiff's claim as a matter of law.

Turning to the merits of Plaintiff's fraudulent misrepresentation claim, "[t]o establish a prima facie case of fraudulent misrepresentation, a plaintiff must show: (1) that the representation was false, (2) that it concerned a material fact, (3) that the plaintiff relied on the false representation, and (4) that actual injury resulted from that reliance." *Rebar*, 28 So. 3d at 725 (citing Ala. Code § 6-5-101). Here, with respect to Terminix's alleged assurances in 2013 that the "spot" treatment would take care of the problem, a reasonable jury could find that Defendant

---

[7] Notably, Plaintiff had not inspected her contract with Terminix until after she discovered the second termite infestation in 2016. (Doc. # 54-3 at 19). Therefore, she could not have known what Terminix was contractually obligated to do when they spot treated her home.

knowingly made a false misrepresentation about a material fact (*i.e.*, that the termiticide treatment would remedy the situation), that Plaintiff relied on that misrepresentation (*i.e.*, she did not take any further action), and that Plaintiff was actually injured as a result of her reliance (*i.e.*, the Residence was damaged by a termite infestation). Because there remains a genuine dispute of material fact as to whether Terminix did in fact knowingly make a false misrepresentation to Plaintiff regarding the adequacy of the spot treatment, summary judgment is inappropriate on this claim.

While Plaintiff's claim for fraudulent misrepresentation survives summary judgment, her claim for fraudulent suppression does not. That claim fails on the merits because it is not supported by any substantial evidence in the Rule 56 record. "A claim for fraudulent suppression requires that the plaintiff show: (1) that the defendant had a duty to disclose material facts; (2) that the defendant concealed or failed to disclose those facts; (3) that the concealment or failure to disclose induced the plaintiff to act; and (4) that the defendant's action resulted in harm to the plaintiff." *Rebar*, 28 So. 2d at 724-25 (quoting *Booker v. United Am. Ins. Co.*, 700 So. 2d 1333, 1339 n.10 (Ala. 1997)). Here, there is no evidence in the record shows that Terminix owed Plaintiff any duty to disclose material information which was separate and distinct from its contractual duty to inspect and treat the Residence.

Under Alabama law, the "existence of a duty [with respect to a claim for fraudulent suppression] is a question of law to be determined by the trial judge." *State Farm Fire and Cas. Co. v. Owen*, 729 So. 2d 834, 839 (Ala. 1998). A duty to disclose may be present in the case of a confidential (*e.g.*, fiduciary) relationship between the parties (there obviously is not such a relationship here) or where there are "'special [or particular] circumstances' mandating

disclosure."[8] *Id.* at 842; *Wolff v. Allstate Life Ins. Co.*, 985 F.2d 1524, 1529 (11th Cir. 1993) (citing Ala. Code § 6-5-102). "The duty to speak depends upon 'the relation of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances.'" *Wolff*, 985 F.2d at 1529.

Here, the court cannot conclude that Terminix owed any duty to Plaintiff as the result of a "special circumstances" relationship. Plaintiff and Terminix were engaged in a standard professional-services contractual relationship. "When both parties are intelligent and fully capable of taking care of themselves and dealing at arm's length, with no confidential relationship, no duty to disclose exists when information is not requested, and mere silence is not a fraud." *Shedd v. Wells Fargo Home Mortg., Inc.*, 2015 WL 6479522, *3 (S.D. Ala. Oct. 26, 2015). This is precisely the case here. And, simply because Plaintiff is not as well-versed in termite treatments as Terminix does not automatically render her incapable of ascertaining facts related to Terminix's practices. *See id.* at 843 ("Superior knowledge of a fact, without more, does not impose upon a party a legal duty to disclose such information.") (quoting *Surrett v. TIG Premier Ins. Co.*, 869 F. Supp. 919, 925 (M.D. Ala. 1994)).

Finally, Plaintiff's claim for promissory fraud also fails. Under Alabama law, to prevail on a claim for promissory fraud, the plaintiff must prove:

> (1) [A] false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation . . . (5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive.

*Cochran v. Five Points Temporaries, LLC*, 907 F. Supp. 2d 1260, 1277 (N.D. Ala. 2012) (quoting

---

[8] *See Owen*, 729 So. 2d at 926 n.7 ("[T]he relationships wherein a duty to disclose has been found indicate that the Alabama courts give little attention to the designation of the relationship, but instead look to the relative bargaining position of the parties.") (citing *First Virginia Bankshares v. Benson*, 559 F.2d 1307 (5th Cir. 1977)).

*Heisz v. Galt Indus., Inc.*, 93 So. 3d 918, 925 (Ala. 2012)). "A plaintiff pursuing a theory of promissory fraud, which requires proof of intent, bears a heavier burden than the one who relies solely on misrepresentation." *Id.* Here, the Rule 56 record is devoid of any evidence that Terminix had the intention to deceive Plaintiff, or not perform its duties under the contract.

### D. Plaintiff's Damages on Her Contract Claim Are Limited

Terminix did not move for summary judgment on the merits of Plaintiff's breach of contract claim; rather, it asserts that any recovery Plaintiff seeks on that claim is limited to retreatment.[9] Terminix contends that "[a]ssuming a genuine issue of material fact as to [whether Terminix breached the contract], the damages [Plaintiff] seeks for that breach should be limited based on the [c]ontract's plain terms." (Doc. # 54 at 20). Terminix further argues that the contract expressly excludes consequential and punitive damages, as well as present or future damage to property. (*Id.* at 22).

The terms of the contract between Terminix and Plaintiff (including paragraph 2, the Limitation of Liability clause) state, in relevant part:

> THIS AGREEMENT DOES NOT GUARANTEE AGAINST, NOR SHALL TERMINIX BE RESPONSIBLE FOR, PRESENT OR FUTURE DAMAGE TO PROPERTY OR CONTENTS, NOR PROVIDE FOR REPAIRS OR COMPENSATION THEREOF. In consideration of the sums charged by Terminix hereunder and as a liquidated damage and not as a penalty, and "NOTWITHSTANDING ANY CONTRACT, TORT OR OTHER CLAIM THAT TERMINIX SHALL NOT HAVE PROPERLY PERFORMED ITS DUTIES TO PURCHASE, THE SOLE RESPONSIBILITY OF TERMINIX IN THE EVENT OF CLAIM SHALL BE TO RE-TREAT THE STRUCTURES. . . .
>
> . . .

---

[9] Alabama law provides a six-year statute of limitations for causes of action based on a simple contract. Ala. Code § 6-2-34(9). The statute begins to run when the contract is breached. *Ala. Teachers Credit Union v. Design Build Concepts, Inc.*, 334 F. Supp. 3d 1171, 1184 (N.D. Ala. 2018). From the Rule 56 record, the court can gauge that the earliest date that Defendant could have breached the contract was when Terminix performed a spot treatment of the Residence—in April 2013. Plaintiff filed her Complaint on November 15, 2017 (*see* Doc. # 1), a date well within the six-year limitations period.

. . . EXCEPT AS OTHERWISE PROHIBITED BY STATUTE OR PUBLIC POLICY, TERMINIX DISCLAIMS AND SHALL NOT BE RESPONSIBLE FOR ANY LIABILITY FOR DIRECT, INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, PUNITIVE, AND/OR LOSS OF ENJOYMENT DAMAGES.

(Doc. # 54-1 at 17-18). Finally, the contract expressly excludes Terminix's responsibility for "any and all damage resulting from termites and/or any other wood destroying organism." (*Id.* at 18).

"Alabama law recognizes the [parties'] freedom to contract and upholds 'clearly manifested limitations' in a contract, such as those found" here—in a contract between a consumer, like Plaintiff, and a company, like Terminix. *Standifer v. Best Buy Stores, L.P.*, 364 F. Supp. 3d 1286, 1295 (N.D. Ala. 2019) (quoting *Campbell v. Southern Roof Deck Applicators, Inc.*, 406 So. 2d 910, 913 (Ala. 1981)). Indeed**,** "[i]n Alabama, limitations on damages that may be recovered are not, *per se,* against public policy. It is well established that [t]he Legislature is endowed with the exclusive domain to formulate public policy in Alabama." *Leonard*, 854 So. 2d at 534 (quotation omitted) (internal quotation marks omitted).

Where the parties have agreed to a limitation of liability clause, the court must determine whether the clause is valid and enforceable. *See Saia Food Distribs. And Club, Inc. v. SecurityLink from Ameritech, Ir*, 902 So. 2d 46, 52 (Ala. 2004). "[T]he party seeking to enforce a limitation-of-liability clause [must first] make[] a prima facie showing that the clause is not unconscionable." *Fox Alarm Co., Inc. v. Wadsworth*, 913 So. 2d 1070, 1076 (Ala. 2005) (citing *Fleming Farms v. Dixie AG Supply, Inc.*, 631 So. 2d 922 (Ala. 1994)). If such a showing is made, then "the burden shifts to the plaintiff to present substantial evidence to the contrary." *Id.* Here, the court has determined that Terminix has initially shown that the limitation of liability clause is not unconscionable, and that Plaintiff has failed to present substantial evidence to the contrary. Because "the court determines that the terms [of the contract] are unambiguous (susceptible of

only one reasonable meaning)," the court will enforce the contract as written. *Harbor Comm'cns, LLC v. Southern Light, LLC*, 2019 WL 4264368, at *6 (S.D. Ala. Sept. 9, 2019) (citations omitted). The court explains its conclusions below.

Notwithstanding the language of the contract, in her Amended Complaint, Plaintiff seeks the exact types of damages that the contract expressly precludes: compensatory (including mental anguish), incidental, consequential, and punitive damages. (Doc. # 10 at 28). Specifically, Plaintiff seeks recovery for (1) damage to the Residence stemming from the termite infestations (*i.e.*, compensatory damages), (2) damages stemming from mental anguish in the form of stress she suffered through the process of dealing with Terminix, (3) consequential and incidental damages, and (4) punitive damages. The court concludes that the damages Plaintiff seeks are limited by the express terms of the contract—which provides that retreatment is the sole contract-breach remedy.

### 1. Compensatory Damages

Plaintiff seeks compensatory damages (such as direct and/or actual damages). Alabama law defines compensatory damages "as those damages that 'will compensate the injured party for the injury sustained, and nothing more; such as will simply make good or replace the loss caused by the wrong or injury.'" *Harbor Comm'cns, LLC*, 2019 WL 4264368, at *7 (quoting Black's Law Dictionary (6th Ed. 1991), then quoting *McMillian v. F.D.I.C.*, 81 F.3d 1041, 1055 (11th Cir. 1996)). Put another way: "Damages recoverable for the breach of a contract are such as are the natural and proximate consequences of the breach, and such as may reasonably be supposed to have been within the contemplation of the parties at the time the contract was made." *Deupree v. Butner*, 522 So. 2d 242, 248 (Ala. 1988).

Here, Plaintiff is not entitled to any compensatory damages because that category of damages is excluded under the plain terms of the contract. Paragraph 6 of the agreement provides

as follows:

> EXCEPT AS OTHERWISE PROHIBITED BY STATUTE OR PUBLIC POLICY, TERMINIX DISCLAIMS AND SHALL NOT BE RESPONSIBLE FOR ANY LIABILITY FOR DIRECT, INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, PUNITIVE, AND/OR LOSS OF ENJOYMENT DAMAGES.

(Doc. # 54-1 at 18).

## 2. Mental Anguish

Plaintiff also seeks damages for mental anguish. Again, the contract's express terms limit such relief. But, even if the contract's terms did not exclude these damages, "[a]s a general rule, mental anguish is not a recoverable element of actual damages growing out of a breach of contract." *Sanford v. Western Life Ins. Co.*, 368 So. 2d 260, 264 (Ala. 1979) (citing *Birmingham Water Works Co. v. Vinter*, 164 Ala. 490 (1910)).

While it is true that Alabama law permits damages for mental anguish (particularly in the context of home construction) in certain circumstances -- *i.e.*, where (1) "the breach be egregious, i.e., that it result in *severe* construction defects; (2) that those defects render the home virtually uninhabitable; and (3) that the breach *necessarily or reasonably* result in mental anguish or suffering," *see TLIG Maint. Servs., Inc. v. Fialkowski*, 218 So. 3d 1271, 1277 (Ala. Civ. App. 2016) (citations omitted); *Sexton v. St. Clair Fed. Sav. Bank*, 653 So. 2d 959, 960 (Ala. 1995) (quotation omitted) -- these circumstances are not present here. *See also Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1359 (11th Cir. 2000). "There must be some nexus between the mental-anguish damages and the intention and contemplation of the parties at the time the contract was made." *Barko Hydraulics, LLC v. Shepherd*, 167 So. 3d 304, 312 (Ala. 2014).The facts of this case do not present such a situation.

Indeed, the Rule 56 record contains no evidence from which a jury could determine that,

as a result of Terminix's insufficient treatment to the Residence, the Residence suffered severe defects, the Residence was uninhabitable, or that Plaintiff suffered such severe suffering and distress rising to a level required to warrant an award of damages for mental anguish. While the court sympathizes with Plaintiff regarding "the frustration, worry, and added expense that she experienced in this case, we cannot say that they exceed the frustration, worry, and added expense in any given breach-of-contract case in which damages for mental anguish are not recoverable." *Fialkowski*, 218 So. 3d at 1278.

### 3. Consequential and Incidental Damages

Plaintiff also seeks consequential and incidental damages. But again, the contract specifically precludes these damages. Section 7-2-719(3) of the Alabama Code provides: "[c]onsequential [and/or incidental] damages may be limited or excluded unless the limitation or exclusion is unconscionable.[10] Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable, but limitation of damages where the loss is commercial is not." *Leonard v. Terminix Intern. Co., L.P.*, 854 So. 2d 529, 534 (Ala. 2002) (emphasis omitted). *See Fleming Farms v. Dixie Ag Supply, Inc.*, 631 So. 2d 922, 926 (Ala. 1994) ("The Uniform Commercial Code recognizes the validity of a limitation or exclusion of consequential damages where the loss is commercial.") (citing *Southland Farms, Inc v. Ciba-Giegy Corp.*, 575 So. 2d 1077, Ala. 1991)); *Kennedy Elec. Co., Inc. v. Moore-Handley, Inc.*, 437 So. 2d 76, 81 (Ala. 1983) ("Alabama law clearly permits a seller to limit or exclude by contract any liability for consequential damages. Such agreements are valid and enforceable.") (citing Ala. Code § 7-2-719(3)).

---

[10] "An unconscionable contract or contractual provision is defined as *a contract or provision 'such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'*" *Sears Termite & Pest Control, Inc. v. Robinson*, 883 So. 2d 153, 158 (Ala. 2003) (quoting *Harold Allen's Mobile Home Factory Outlet, Inc. v. Butler*, 825 So. 2d 779, 783 (Ala. 2002)).

Here, the express terms of the parties' agreement bars Plaintiff from recovering any consequential or incidental damages. This is not a case where Plaintiff suffered personal injuries from a consumer good; rather, this is a "commercial" loss case where Plaintiff's home experienced a termite infestation. There is nothing in the Rule 56 record suggesting that such exclusions, under the facts of this case, are unconscionable.

### 4. Punitive Damages

Finally, Plaintiff seeks punitive damages. Not only are punitive damages barred by the terms of the contract, but also Alabama law provides that "[p]unitive damages are generally not allowed in actions for breach of contract." *John Deere Indus. Equip. Co. v. Keller*, 431 So. 2d 1155, 1157 (Ala. 1983) (citing *Wood v. Citronelle-Mobile Gathering System Co.*, 409 F.2d 367 (5th Cir. 1968)). Indeed, "[p]unitive damages may not be awarded in any civil action . . . other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff." Ala. Code § 6-11-20(a); *see In re St. Laurent*, 991 F.2d 672, 676 (11th Cir. 1993) ("Ordinarily, punitive damages may not be recovered in breach of contract actions. Punitive damages, however, may be recovered when the acts constituting the breach also amount to an independent cause of action in tort.") (citations omitted). Because Plaintiff may not recover punitive damages on her breach of contract claim, and because they are barred by the terms of her contract with Terminix, Plaintiff may not seek an award of punitive damages.

For these reasons, Defendant's Motion for Partial Summary Judgment is due to be granted as to Plaintiff's breach of contract claim. The only relief Plaintiff may recover on that clam, if she is successful, is retreatment of her home.

### E. Both of Plaintiff's Claims for Equitable Relief Necessarily Fail Under Alabama Law

#### 1. Unjust Enrichment

In Count Five of her Amended Complaint, Plaintiff contends that she "paid sums of money to Defendants pursuant to the contractual agreements between the parties[] and relied upon the promises and representations of Defendants to provide termite protection to the [Residence]." (Doc. # 10 at 25, ¶ 130). She claims that Terminix has been unjustly enriched and she is entitled to the money she has paid to Defendant, with interest. (*Id.* ¶ 132). The court disagrees.

The Alabama Supreme Court has recognized that an unjust enrichment claim and a breach of contract claim are mutually exclusive, if both are based on the same facts and the same contract. *Blackmon v. Renasant Bank*, 2017 WL 1033667, at *3 n.4 (Ala. Mar. 17, 2017); *see, e.g.*, *Lass v. Bank of America, N.A.*, 695 F.3d 129, 140 (1st Cir. 2012). "[T]he existence of an express contract extinguishes an unjust enrichment claim altogether because unjust enrichment is an equitable remedy which issues only where there is no adequate remedy at law." *Blackmon*, 2017 WL 1033667, at *3 n.4 (quoting *Univalor Tr., SA v. Columbia Petroleum, LLC*, 315 F.R.D. 374, 382 (S.D. Ala. 2016)).

Plaintiff's breach of contract and unjust enrichment claims are based on the same facts. (*See* Doc. # 10 at 24-25, ¶¶ 128-31). Because she is proceeding on her contract claim, she cannot maintain an unjust enrichment claim.

#### 2. Made-Whole Doctrine

Plaintiff has asserted a claim under the made-whole doctrine, but that "claim" does not state a cause of action under Alabama law. Rather, this theory embodies "a principle of damages where if money cannot adequately compensate a Plaintiff, the court may be able to award equitable damages to the Plaintiff." *Carr v. Haralson Termite & Pest Control, Inc.*, 2018 WL 5084848, *5-

6 (N.D. Ala. Oct. 18, 2018) (citing *Tiger Motor Co. v. McMurtry*, 224 So. 2d 638 (Ala. 1969)).

> [The made whole doctrine] is not a principal or a claim under which a Plaintiff may seek relief. And, even if the Plaintiff could assert a claim under the "made whole" doctrine, it is inapplicable here. The court cannot find one Alabama case, and Plaintiff does not cite to any, where the "made whole" doctrine was applied outside the insurance/subrogation context.

*Id.* (citing *Ex parte State Farm and Casualty Co.*, 764 So. 2d 543, 545-46 (Ala. 2000); *Wolfe v. Alfa Mut. Ins. Co.*, 880 So. 2d 1163, 1167 (Ala. Civ. App. 2003); *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 39 (11th Cir. 1989); *Cagle v. Bruner*, 112 F.3d 1510, 1522 (11th Cir. 1997)).

Plaintiff cannot proceed on this claim because Alabama law does not recognize it as an independent cause of action.

## IV. Conclusion

For all the reasons discussed above, Defendant's Motion for Partial Summary Judgment (Doc. # 54) is due to be granted in part and denied in part. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this March 6, 2020.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE